# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 06/19/2019 05:05 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

Case 2:21-cv-09253-GW-RAO   Document 1-1   Filed 11/29/21   Page 2 of 27   Page ID #:6

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Patricia Nieto

1  Brandon S. Reif (SBN 214706)
2  docket@reiflawgroup.com; breif@reiflawgroup.com
   Ohia A. Amadi (SBN 268876)
3  oamadi@reiflawgroup.com
   **REIF LAW GROUP, P.C.**
4  1925 Century Park East, Suite 1700
5  Los Angeles, CA 90067
   Tel: 310.494.6500
6
7  Jon C. Furgison (SBN 205761)
   jon@furgisonlawgroup.com
8  **FURGISON LAW GROUP, P.C.**
   444 Longfellow Avenue
9  Hermosa Beach, CA 90254
   Tel: 310.356.6890
10
11 Attorneys for Plaintiff

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13              COUNTY OF LOS ANGELES – CENTRAL DISTRICT

14

15 EMMA ANGELICA MCKINNON, an individual,       Case No.: 19STCV21598

16              Plaintiff,                        **PLAINTIFF'S COMPLAINT FOR:**

17       vs.                                      1. **PROFESSIONAL NEGLIGENCE**
                                                  2. **BREACH OF FIDUCIARY DUTY**
18 MINNESOTA LIFE INSURANCE COMPANY, a           3. **CAL. FINANCIAL ELDER ABUSE**
19 Minnesota corporation; SHURWEST HOLDING       4. **INTENTIONAL DECEIT/FRAUD**
   COMPANY, INC., an Arizona corporation;        5. **DECLARATORY RELIEF**
20 SHURWEST, LLC, an Arizona limited liability
21 company; CMAM, INC. dba HERITAGE
   FINANCIAL SERVICES, a California corporation;  **DEMAND FOR JURY TRIAL**
22 ALBERT ANDREW MANFRE, an individual;
23 JEANETTE MANFRE, an individual; DANIEL
   KLEIN, an individual; and JAMES A. ANTON, an
24 individual; and DOES 1-10, inclusive,
25              Defendants.
26
27
28

- 1 -

Plaintiff Emma Angelica McKinnon ("Plaintiff") alleges as follows:

**I.    PARTIES**

1.      Plaintiff is, and at all times relevant was, residing in the State of California in Los Angeles County.  Plaintiff asserts her right under the California's financial elder abuse statute because she was, at all relevant times, over the age of 65. Plaintiff was 68 years of age in 2017, a date when a substantial part of the misconduct occurred as set forth herein.

2.      Plaintiff is a widow and suffers from physical and mental anguish and fatigue brought on by the loss of her husband and the stress of the loss of a substantial portion of her net worth. After her husband's death, Plaintiff was diagnosed with Caregivers Syndrome.  Plaintiff was not physically, mentally or emotionally prepared to make complex financial decision from 2014 to 2018.  All of the defendants took advantage of Plaintiff's impaired state and exerted undue influence and duress over her.

3.      Defendant Minnesota Life Insurance Company ("MLIC") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota.  It is, and at all relevant times was, licensed in the State of California to offer and sell life insurance products.

4.      Defendant Daniel Klein ("Klein") is a California resident and during all relevant times maintained a permanent office in the State of California, yet, it remains unclear whether Klein was licensed in the State of California to offer and sell life insurance and securities at the time of the transactions.  The lack of certainty and clarity is due to Klein's violations of California insurance laws: his communications and promotions to and with Plaintiff did not contain his California Department of Insurance license number or disclose whether he was licensed to offer or sell securities.

5.      Defendant CMAM, Inc. dba Heritage Financial Services ("Heritage"), a California corporation, is a financial services firm with its principal place of business in California.  It maintains a permanent office in the State of California and is, and at all relevant times was, licensed in the State of California to offer and sell life insurance and annuities, but not securities transactions.

- 2 -

6

6.     The California Department of Insurance ("DOI") does not currently list Heritage as an appointed agent with MLIC and it does not appear to be authorized to transact MLIC insurance business with California citizens, although, it is alleged on information and belief, that at the relevant time period, Heritage was an appointed agency to sell MLIC insurance policies.

7.     Defendants Shurwest Holding Company, Inc. and Shurwest, LLC (collectively, "Shurwest") are Arizona businesses that conduct regular, ongoing activities in the State of California.  Ronald L. Shurts is the President of Shurwest Holding Company, Inc. and the Manager of Shurwest, LLC.  Shurwest markets and sells life insurance, annuities and securities to consumers.  Shurwest, LLC and several other entities controlled by Shurwest Holding Company, Inc. are businesses licensed with the DOI to offer, market and sell insurance to California consumers.

8.     Defendant Albert Andrew Manfre ("Albert") is an individual residing, on information and belief, in San Juan Capistrano, California, and is the President of Heritage and its now dissolved predecessor Albert Andrew, Inc. Albert supervised Klein's insurance sales activities including the sales practices with Plaintiff.  He is also an appointed agent of MLIC. Albert is licensed to sell life and accident insurance by DOI License No. 0786630. On information and belief, he is married to defendant Jeanette.

9.     Defendant Jeanette Manfre ("Jeanette") is an individual residing, on information and belief, in San Juan Capistrano, California, and is employed by Heritage. Plaintiffs are informed and believe that she is the CEO of Heritage. Jeanette supervised Klein's insurance sales activities including the sales practices with Plaintiff.  She is also an appointed agent of Defendant MLIC.  Jeanette is licensed to sell life and accident insurance by the DOI License No. 0H24714. Plaintiffs are informed and believe that she is married to Albert. (Collectively, Jeanette and Albert are "the Manfres").

10.     Defendant James A. Anton ("Anton") is an attorney licensed to practice law in the State of California (SBN 144999) with his principal place of business in Irvine, California. Anton violated California Rules of Professional Conduct Rules 1.4 and 1.7 (predecessor 3-310 and 3-500) by providing legal representation and advice to Plaintiff in 2018 and simultaneously,

jointly and/or concurrently, representing directly adverse parties (Heritage, Klein and the Manfres) in the same matter. Alternatively, if Anton did not form an attorney-client relationship with Plaintiff, she was an intended third party beneficiary of the attorney-client relationship between Anton and Heritage/Manfres (and possibly Klein).  Anton failed to provide Plaintiff with informed disclosures and failed to disclose the material risks arising from his joint and/or concurrent representation of directly adverse parties in the same matter such that Anton reasonably expected Plaintiff to rely on his legal advice and impressions in year 2018.  Anton's actionable advice led Plaintiff to be he harmed by Anton.

11.    Heritage, the Manfres, Klein, Shurwest and MLIC and Anton are collectively described as the "Defendants" and Heritage, the Manfres, Klein, Shurwest and MLIC are collectively described as the "Insurance Defendants".

12.    Nonparty GoldStar Trust Company ("GoldStar") is a self-directed individual retirement account ("IRA") custodian, trustee, and escrow/paying agent headquartered in Canyon, Texas.  GoldStar is not named as a Defendant in this action.

13.    At all times relevant to this action, Klein was an authorized and appointed agent with MLIC and Shurwest and authorized to transact MLIC insurance business through Shurwest, a managing general agency that assembled insurance agents to endorse and process insurance business for MLIC.   At all times relevant to this action, Klein was also an authorized agent for Heritage, including dba Heritage Insurance Group and an agent for Goldstar, which took custody of Plaintiff's qualified-retirement assets in furtherance of Defendants' insurance scheme.

14.    Shurwest, for itself and MLIC, processed Klein's insurance applications for Plaintiff even though it is unclear if Klein was licensed to offer or sell insurance in the State of California because he failed to disclose his California license number on required insurance-related documents and disclosures.  Shurwest also marketed, promoted, trained and facilitated insurance agencies, including Heritage, and appointed insurance agents, including Klein, to sell the "Structured Cash Flow" aka "IRA Reboot" program consisting of a scheme to sell both indexed universal life insurance with excessive premiums and investments intending to yield

- 4 -

8

high income to fund the insurance premiums, all the while lining the pockets of the Defendants and harming the Plaintiff.

15.     The IRA Reboot was purportedly a "unique financial vehicle that provides a predictable stream of income with a specific rate of return over a specified time period."  This description was false and misleading because it was not a "predictable" source of income for a specific rate of return. It was a high-risk, illiquid scheme concocted by Defendants to generate excessive fees and to lock-up investors' retirement capital.

16.     Plaintiffs are unaware of the true names and capacities, whether individual, corporate, agent, representative, or otherwise, of the Defendants named herein as DOES 1 through 10 and therefore sue such Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that Does 1 through 10 are persons, corporations, partnership, or other entities that were agents of Defendants, or have directed, approved, committed, colluded with Defendants to commit, participated in, or added and abetted the acts and transactions alleged in this complaint. Each is therefore liable for the acts alleged in this complaint. The true names, capacities, and/or roles of Does 1-10 are unknown to Plaintiff, and Plaintiff will amend this complaint when their true names, capacities, and roles are known.

17.     Plaintiff alleges, on information and belief, that, at all material times herein mentioned, each Defendant was the agent, principal, servant, representative, employer, employee, joint venturer, co-conspirator, partner, parent, subsidiary, affiliate and/or alter ego of each and every other Defendant and, in doing the things hereinafter alleged, was acting within the course and/or scope of such authority as the agent, principal, servant, representative, employer, employee, joint venturer, co-conspirator, partner (of any kind), parent, subsidiary, affiliate, and/or alter ego with the authority and consent of the remaining co-Defendants except where otherwise specifically described.

18.     Plaintiff is informed and believe, and on that basis, alleges that Defendants conspired to and did commit the inequitable, tortious and/or unlawful acts herein alleged in furtherance of their conspiracy to accomplish their unlawful purposes. Defendants, and each of them, caused injury to Plaintiff.

II. **JURISDICTION AND VENUE**

19.    Jurisdiction and venue are proper in this Court under California Code of Civil Procedure §§ 395(a), 395(b), 395.5, et. seq. because a substantial part of the events or omissions giving rise to the claim occurred in this County in that the relationships and conduct at issue in this case were entered into with and affected Plaintiff, a resident of this County.

20.    Defendants are subject to jurisdiction and venue in this County because they engaged in professional activities with Plaintiff in this County. Defendants' professional services were offered and provided to Plaintiff, an elderly consumer, in this County. Their professional activities required licensing and registration with the State of California under the corporations codes, yet Klein, Heritage and Shurwest were not certificated nor authorized to conduct business with California citizens.

21.    Shurwest is an out-of-state company licensed with the California Department of Insurance to conduct insurance business in California, so it is subject to general jurisdiction in this State.  Shurwest is also subject to specific jurisdiction in this action because it participated in the professional services offered and provided to Plaintiff with knowledge that its acts and services were provided to an elderly California consumer. Because Shurwest has no agent for service in this State, venue is proper in this County.

22.    MLIC is an out-of-state company licensed with the California Department of Insurance and the California Department of Business Oversight, so it is subject to general jurisdiction in this State.  It is subject to specific jurisdiction in this State because it participated in the professional services offered and provided to Plaintiff.  Because MLIC has no agent for service of process in this State, venue is proper in this County.

III. **OPERATIVE FACTS**

23.    Plaintiff came to the United States by herself at the age of 18 from Lima, Peru. She came to the United States to obtain an education so that she could support her impoverished family left behind in Peru.  Shortly after arriving in the United States, Plaintiff met her husband, a Vietnam War veteran who had received a United States Armed Forces Purple Heart Medal.

- 6 -

24.  Plaintiff and her husband were married for 45 years. They both worked tireless hours and earned modest salaries to support their children and extended family members. In 2010, Plaintiff's husband retired from the workforce, and Plaintiff retired one year later.

25.  They lived modest lives and over the course of a lifetime of work, they paid off their primary residence, support their extended family members living outside the country and they diligently saved money for their retirement. Plaintiff's retirement nest egg was expected to survive her modest primary living expenses.

26.  In 2014, Plaintiff's husband was diagnosed with Cancer. He passed away on October 15, 2016.  The stress of caring for her ailing husband and the financial impact of the high medical cost that was incurred due to his illness took its toll on the Plaintiff physically, mentally and financially.  After his death, Plaintiff was diagnosed with Caregivers Syndrome, which she suffered from during all times relevant.  Plaintiff was not physically, emotionally or mentally prepared to make any complicated financial decision at that point forward.

27.  Plaintiff's financial needs were to meet her day to day living expenses after her husband's death, as well as her own mounting medical bills to treat the illness she now suffered.

28.  Plaintiff owned a life insurance policy, which she obtained at age 50. Consequently, Plaintiff had no need for an expensive life insurance policy with excessive annual premiums.  Yet, Defendants recommended that Plaintiff purchase a costly life insurance policy for the death benefit, to defer taxes and as an investment vehicle. This advice was unlawful.

29.  At the onset of the professional relationship with Defendants in 2012, Defendant Klein was informed by Plaintiff and her husband that they were retired and living on a fixed type of budget. Klein convinced Plaintiff and her husband to move the husband's assets to Fidelity. It is believed these assets were invested into an annuity contract. There is no evidence in the record that Klein was ever securities licensed.

30.  In 2014, Plaintiff's husband fell ill to Cancer. He was undergoing Chemotherapy and surgeries to combat the disease, which was spreading to his lungs and brain.

31.  In 2015, Klein met with the couple. It was at this time that Plaintiff's husband told Klein that he was too sick and did not feel well enough to make any financial changes or

- 7 -

PLAINTIFF'S COMPLAINT

11

decision. The Cancer had continued to spread to his lungs and brain, he was in no capacity to make complicated financial decisions for he and his wife.  Plaintiff also told Klein that she couldn't make any changes without her husband and it was not a good time to discuss their finances with him so gravely ill.

32.    In 2017, after her husband's death and while she was still in mourning and suffering from her own debilitating physical and mental medical issues, Klein, acting for Defendants Heritage, the Manfres, Shurwest and MLIC, induced Plaintiff to move her assets from Fidelity where these funds were safe and FDIC-insured, to purchase a life insurance policy and to rollover her qualified assets to Klein's investment management with GoldStar for further purchase of $572,511 in Future Income Payments ("FIP").

33.    The advice violated California common law, insurance rules and securities laws, among other laws and rules, it is believed they were not licensed or certificated to advise Plaintiff about her investment portfolio or rolling it over to another entity.

34.    Insurance Defendants did not inform Plaintiff that a life insurance policy was not advisable for her needs: her investment funds were already qualified in a tax-deferred vehicle; and she was elderly and living on a fixed budget without expendable funds to pay the premiums. Insurance Defendants knew, or should have known, at the time of the recommendations that Plaintiff was a poor candidate for life insurance, yet the Insurance Defendants, through their authorized agent Klein, recommended it to her in violation of California insurance laws, among other laws and rules. Shurwest, Heritage and MLIC supported and encouraged Klein to induce Plaintiff and to exert undue influence and duress over her to sell commissioned products.

35.    The application submitted to MLIC in September 2017, by Defendants Klein, Heritage and Shurwest requested the Orion Indexed Universal Life Insurance Policy ("IUL"), a flexible premium universal life policy with indexed features, with annual premiums of $92,000, a face value of $750,000 and an increasing death benefit feature, which would potentially equate to approximately $936,365.

36.     The disclosures on the application should have been a cause for concern because Plaintiff's earned income was correctly disclosed as $36,000 but Heritage, Klein, the Manfres and Shurwest inflated her net worth as $1,200,000 and inflated her liquid net worth as $650,000.

37.     Insurance Defendants untruthfully prepared the application paperwork, but all of the Defendants processed it anyway. For instance, Insurance Defendants falsely checked the box "No" that Plaintiff was not replacing an existing insurance or annuity contract as a result of this application. Section G of the insurance application defined: "Replacements includes a lapse, surrender, 1035 exchange, loan withdrawal or other changes to any existing life insurance or annuity". Yet in the section below, Klein disclosed that an "in force policy" with "Fidelity/Guaranty annuity contract" in the amount of $550,000, year issued in 2012.  This material inconsistency did not raise a concern or red flag with Insurance Defendants to reassess if the recommendation complied with California laws and insurance industry standards of care.

38.     Under the applications section M, item 1: "Insurable interest and Premium financing suitability" and "Is this policy in accordance with the owners' insurance objective and anticipated financial needs", Defendants, via Klein marked "Yes". This notation was untruthful because Insurance Defendants recommended financing the policy through investment vehicles sponsored and endorsed by Shurwest.

39.     Further under Section M, item 2: "Has the representative discussed with the owner the need for the policy, the ability to pay premiums and whether the policy is suitable" This item was marked "Yes". This notation was untruthful because Insurance Defendants knew or should have known that Plaintiff could not afford excessively high annual premiums.

40.     Insurance Defendants acting through Klein and at the strong encouragement of Heritage, Shurwest and MLIC to sell commission-generating products, falsely check Section M, box 5: "Is this policy being funded via a premium financing loan or with funds borrowed, advanced or paid from another person or entity (including a loan against your home or other assets".)  Defendants Klein, Heritage, Manfres and Shurwest knew without equivocation that the plan was to utilize Plaintiff's IRA assets to purchase an investment in FIP in order to allegedly harvest income to fund the policy.  MLIC knew or should have known of this income-generating

- 9 -

13

plan because dozens to hundreds of MLIC customers followed this plan to fund the MLIC policy in this time period.

41.    Insurance Defendants planned for the FIP investment to yield funds to pay the MLIC premium payments and all of the Insurance Defendants profited and intended to profit from this scheme.

42.    Insurance Defendants did not inquire about Plaintiff's ability to pay high premiums and to risk her much-needed principal for her retirement needs.

43.    Insurance Defendants sold Plaintiff the MLIC Life Orion Indexed Universal Life Policy (IUL), with indexed features, on November 10, 2017.  Plaintiff had never before owned a similar complex policy and was unaware of its existence until it was strongly recommended by Insurance Defendants, through Klein.  Insurance Defendants never fully presented this complex policy to Plaintiff in an easily understandable manner.  The discovery in the case may uncover other marketing and sales practice violations by Insurance Defendants.

44.    The MLIC Orion Index Universal Life policy Insurance Defendants ultimately sold her disclosed policy face value amount as $750,000 with an increasing death benefit option to approximately $936,365 and the annual premiums as $92,000.  The proposed premiums were unaffordable to her.

45.    Insurance Defendants, via Klein, Heritage, Shurwest and MLIC, guaranteed Plaintiff that she could receive the entire face value and death benefit while alive for her use. Plaintiff followed Insurance Defendants' advice and submitted and processed her application. The policy was issued with an effective policy date of November 10, 2017.

46.    Prior to purchasing the life insurance policy, Plaintiff informed Insurance Defendants, through their agent Klein, that she could only fund the premiums with qualified tax-deferred assets. These facts, had they been viewed under industry standard sales practice rules and guidelines, would have ruled out this life insurance policy as a lawful recommendation to Plaintiff.

47.    From the onset, Plaintiff did not need and could not afford this policy, which are all facts the Insurance Defendants, through Klein, had actual knowledge about and the co-

- 10 -

Defendants knew of or should have known about.  Plaintiff paid the initial premium with qualified funds from her IRA.  She did not pay the year two premium because it was unaffordable after the devasting loss of her IRA assets. None of these events raised any red flags or concerns with Insurance Defendants.

48.     Based on Insurance Defendants' recommendation, Plaintiff used qualified funds from her IRA totaling $24,000 to pay the initial premium.  The premium payment was sourced from her qualified retirement account, a fact she disclosed to Insurance Defendants, via Klein. Yet, Insurance Defendants failed to modify their recommendations upon learning these facts. The fact that Insurance Defendants, via Klein, did not protest or question Plaintiff paying premiums with tax-deferred assets was improper and unlawful.

49.     By 2018, the life insurance policy was at risk of cancellation because Insurance Defendants, via Klein, exhausted most of Plaintiff's qualified liquid assets and Plaintiff was unable to meet the required premium payments.

50.     Insurance Defendants substantially depleted Plaintiff's entire liquid net worth, retirement savings and financial well-being by placing her into the MLIC IUL policy and FIP. Insurance Defendants, acting through Klein and his co-conspirators, convinced Plaintiff to liquidate her investments in a tax-deferred IRA and to roll over her assets to GoldStar for investment management.  At the time, Plaintiff was over 65 years old.

51.     Insurance Defendants did not inform Plaintiff that the MLIC IUL and FIP were high-risk transactions and that FIP was an unregistered investment that was not approved by the DBO or the SEC.  Insurance Defendants did not inform Plaintiff that this structured income stream was a sales practice violation for an elderly individual living on a fixed budget.

52.     Insurance Defendants never informed or warned Plaintiff that Heritage, Shurwest and MLIC had a history of preying on senior citizens and that FIP had a similar history of preying on senior citizens, disabled veterans and retirees living on fixed pension or income streams.

53.     Insurance Defendants also failed to inform Plaintiff that before the time Insurance Defendants were recommending FIP to Plaintiff, FIP was being investigated by regulators in

- 11 -

1   New York, California, Massachusetts, Iowa, Washington, North Carolina, and the Consumer

2   Financial Protection Bureau due to predatory lending practices.

3        54.    Plaintiff followed Insurance Defendants' recommendations and advice over the

4   course of many years, but in the course of transferring her assets to GoldStar did not give

5   informed consent to purchase FIP interests with all her qualified tax-deferred funds.

6        55.    The Purchase Agreement for FIP was signed by Plaintiff and Defendant Klein, for

7   himself and as "agent" for Heritage and MLIC on September 9, 2017. Klein had regularly and

8   consistently communicated with Plaintiff as an authorized agent for Heritage, Shurwest and

9   MLIC.  Further, Heritage and Shurwest had an insurance agency relationship and worked

10   closely, whereby Shurwest promoted, endorsed and sponsored the Structured Cash Flow

11   program utilizing MLIC and FIP in tandem.

12        56.    The FIP Purchase Agreement was presented and sold to Plaintiff by Insurance

13   Defendants in the same manner at or near the same time period as the life insurance policy.

14   Plaintiff was unaware that she had purchased the FIP investment independently of the MLIC IUL

15   policy.

16        57.    On or about November 2017, assets from Plaintiff's IRA held in a custodial

17   account with GoldStar, purchased, approximately $572,511 in FIP.  This purchased consumed

18   Plaintiff's near-entire IRA.  It was an unlawful, concentrated and illiquid investment in a high-

19   risk, non-qualified asset.

20        58.    Plaintiff was unaware and uninformed, from the onset of her relationship with

21   Defendants, that rolling over her retirement account to the IRA incurred tax obligations,

22   penalties Plaintiff was unaware and uninformed by Defendants that using her tax-deferred IRA

23   to fund the life insurance policy and FIP incurred tax obligations and penalties.  Insurance

24   Defendants never warned Plaintiff of these risks or about these unlawful recommendations and

25   unlawful transactions.

26        59.    The IRA account carried the FIP interests on its periodic account statements and

27   reflected the account representative as "Dan Klein". Heritage and Klein were not licensed to

28   serve as Plaintiff's account representative on the IRA account.  Klein and the other Defendants

- 12 -

16

1    managed the IRA account for Plaintiff, including the receipt of interest income from FIP and

2    processing Plaintiff's income taxes on the purchase and sales, as reflected on the periodic

3    account statements.  FIPs transactions through Plaintiff's IRA account would not have occurred

4    without Heritage, Shurwest and Klein's active involvement. They acted without the requisite

5    licenses to buy, sell and manage investments for an elderly consumer; using qualified funds to

6    purchase nonqualified investments for an elderly consumer; buying uncertificated, unregistered

7    investments; receiving income from the unlawful investments and reporting income taxes.

8         60.    Klein, on behalf of the Insurance Defendants, lied to Plaintiff advising her that the

9    IRA reboot plan would not incur any adverse taxes or tax penalties, which was an intentional

10   false statement.  Klein stated: "you are not going to have to pay any more taxes than you

11   normally would Emma." Klein, on behalf of Insurance Defendants, also guaranteed Plaintiff a

12   seven percent annual return on FIP to pay for the IUL premiums.

13        61.    Plaintiff was unaware at all time relevant that the Insurance Defendants did not

14   properly disclose the nature of this product or its risks to Plaintiff. Nor does Plaintiff recall ever

15   receiving any documents or marketing materials describing this product and its risks. Plaintiff

16   maintains that she was told by Insurance Defendants, via Klein, that her funds where to be

17   invested in the "S&P 500" which was an intentional misrepresentation and fraudulent

18   misrepresentation.  The actions of Insurance Defendants were false and misleading and lured

19   Plaintiff into high-risk, unaffordable and costly investments and unneeded life insurance.

20        62.    FIP began to collapse and ultimately failed in 2018.  At the same time, the

21   remainder of Plaintiff's liquid assets were tied up in the MLIC IUL she could not afford.  Nearly

22   all of Plaintiff's liquid assets were locked-up in these two investments.

23        63.    Insurance Defendants blamed Plaintiff and others including and especially

24   Shurwest for the loss of Plaintiff's retirement assets.  Heritage, the Manfres and Klein told

25   Plaintiff that they had a lawyer (Defendant Anton) that could and would be hired, for the benefit

26   of Plaintiff, to pursue claims against FIP, Shurwest and MLIC.

27

28

1

IV.   **ANTON'S FRAUDULENT SETTLEMENT INDUCEMENT**

2

      64.     Plaintiff continued to rely on Heritage, Klein and the Manfres for financial,

3

investment and insurance advice when Anton was hired by Heritage to represent Plaintiff's

4

interests in early 2018.  Anton prepared and caused to be delivered to Plaintiff a "Retainer

5

Agreement" encompassing full-scope "… pre-litigation legal advice regarding FIP and if

6

necessary to institute litigation to recover money as a result of FIP default in payments."  The

7

Retainer Agreement stated that Heritage would pay for Plaintiff's legal services. Anton's

8

Retainer Agreement stated he is jointly and/or concurrently representing, among others,

9

Heritage.  Anton failed to disclose the type and nature of this joint and/or concurrent

10

representation and failed to disclose that Heritage was directly adverse to Plaintiff with respect to

11

the FIP collapse.  Anton also failed to disclose that he jointly and/or concurrently represented the

12

Manfres, which he did.  This disclosure failed to provide Plaintiff with sufficient information to

13

give informed consent to waive the conflict and failed to fully inform Plaintiff of the nature and

14

scope of the conflict and the risks it posed to her.  This disclosure did not comply with the

15

California Rules of Professional Code 3-300. Anton e-signed the Retainer Agreement purporting

16

that it complied with the rules, which it didn't.  Although Plaintiff did not return a signed copy,

17

she received Anton's legal advice and the attorney-client relationship was formed in early 2018.

18

Additionally, Plaintiff was an intended third party beneficiary and assets her claim in the

19

alternative as a third party beneficiary.

20

      65.     Heritage, Klein and the Manfres added Anton, with his consent[1], to the

21

professional team in early 2018, allegedly to work for Plaintiff's benefit, to provide legal advice,

22

impressions and representation with respect to the FIP collapse.

23

      66.     After FIP imploded, the Manfres, Klein and Anton freely discussed Plaintiff's

24

confidential financial information and potential legal maneuvers to recover her lost money based

25

on the allegations in this action. Anton, acting as Plaintiff's attorney, evaluated her confidential

26

information in order to develop legal claims and theories and to import legal advice and

27

[1] All the following allegations against Anton were done with Anton's actual or constructive consent and

28

he ratified the acts in any event.

recommendations to Plaintiff. Anton conveyed his privileged impressions to Plaintiff's advisors, Albert and Klein, who communicated Anton's privileged impressions and recommendation to Plaintiff. Anton's impressions and Plaintiff's privileged responses was openly communicated back and forth vis-a-vie Albert and Klein, dual agents for Anton and Plaintiff. The information was then communicated to Plaintiff for the purpose of legal advice.

67.    The crux of Anton's advice to Plaintiff was that she had strong claims against FIP, Shurwest and MLIC and that she should rely on Heritage, the Manfres and Klein as key witnesses to support her case. Anton's communications suggested that Heritage, the Manfres and Klein were not liable to her, which was a false fact. Anton prepared a retainer agreement, signed it himself and communicated to Plaintiff offering to prosecute a lawsuit as her attorney. But, the attorney-client relationship between Plaintiff and Anton was formed through the communicated legal advice and impressions not the conveyance of this partially signed retainer agreement. The retainer agreement is additional proof of Anton's intent to represent Plaintiff. Overall, Anton broke his duty of care and duty of loyalty to Plaintiff and neglected to obtain her informed consent to take the actions he took herein.

68.    But, Anton was already representing Heritage and the Manfres as their attorneys to minimize or eliminate their exposure to risk for the FIP implosion. Anton could not ethically or competently dually and/or concurrently represent directly adverse parties because the imploded products were recommended also by Heritage, the Manfres and Klein. Nevertheless, Anton continued to authorize Albert and Klein to have multiple discussions and meetings with Plaintiff to convey his legal impressions and advice. Meanwhile, Anton was actively trying to protect Heritage and the Manfres from exposure arising from their clients who purchased products recommended and sold by MLIC and Shurwest.

69.    The conspiracy was intended to, and did, cause Plaintiff to receive Anton's legal advice and impressions as her attorney. Anton, the Manfres and Heritage convinced Plaintiff to release claims against the Manfres and Heritage and to assign her rights against FIP/Shurwest/MLIC for Anton to prosecute, without the advice of independent legal counsel.

- 15 -

1    Anton failed to competently represent Plaintiff and obtained her release to benefit himself (to

2    prosecute claims for a fee) and to benefit his other clients, Heritage and the Manfres.

3           70.    Anton drafted the Fraudulent Settlement for the benefit of Heritage and the

4    Manfres, to Plaintiff's harm.  Anton vis-a-vie Albert and Klein communicated to Plaintiff that

5    the Fraudulent Settlement was in her best interest and to sign it without independent legal

6    counsel.  Anton did not competently disclose to Plaintiff that he drafted the Fraudulent

7    Settlement to protect Heritage, the Manfres and Klein and to earn fees for his work and

8    anticipated prosecution work.  Heritage, the Manfres, Klein and Anton falsely represented to

9    Plaintiff that the Fraudulent Settlement was for her protection.  Anton, Heritage, Klein and the

10   Manfres knew that these misstatements were intended to disclaim their culpability.

11          71.    Plaintiff had no actual notice and did not discover potential misconduct until

12   2018, when she first communicated with her current attorneys

13          72.    Additionally, to induce Plaintiff to sign the Fraudulent Settlement, Klein falsely

14   informed Plaintiff that Anton had "won" money from Shurwest and that "Shurwest has given the

15   best settlement terms they could come up with to start people receiving their payments monthly."

16   Klein falsely informed Plaintiff that the settlement payment terms were offered by Shurwest after

17   spending "years and years in court." Klein also lied to Plaintiff informing her: "if you don't get

18   your payments, you can s[t]ill sue us and shurwest!" Klein's false statements were made on

19   behalf and with the authorization of Heritage and the Manfres.Albert adopted and authorized

20   these false statements and adopted them on behalf of the Manfres, Heritage, Klein and Anton

21   when Albert visited Plaintiff at her home and presented the Fraudulent Settlement.

22          73.    On or about August 13, 2018, Plaintiff was defrauded and intentionally misled

23   into signing away her rights against Heritage and certain co-defendants in a "Confidential

24   Settlement Agreement and Full Assignment" ("Fraudulent Settlement") prepared by Anton who

25   jointly and/or concurrently represented Plaintiff's interests and Heritage, the Manfres and Klein's

26   interests. Anton failed to disclose the material risks to Plaintiff that he (Anton), Heritage, the

27   Manfres and Klein's interests were directly adverse to her interests and that Anton was serving

28   as their legal counsel, not hers. The relationships among Anton, Heritage, the Manfres and Klein

1  were unknown to Plaintiff.  Yet, Anton, Heritage, the Manfres and Klein kept Plaintiff unaware

2  of Anton's priorities – inducing Plaintiff to release her rights to benefit his other clients.

3       74.    Heritage and the Manfres directed Anton to prepare the Fraudulent Settlement for

4  presentation to Plaintiff with Anton's recommendation vis-a-vie Albert and Klein that it was in

5  her best interests.

6       75.    The Fraudulent Settlement offered Plaintiff illusory monthly payments, without

7  any assurances or security interest, to be paid out over 84 months, or 7 years, in exchange for

8  giving an irrevocable assignment of her rights against Heritage, Shurwest and other non-specific

9  persons or entities.  Section 2.3 of the Fraudulent Settlement illustrates the illusory payment

10  terms because the irrevocable assignment "shall remain in effect regardless of whether the

11  Settlement Sum is paid or whether Monthly Payments are made or not made. Purchaser agrees

12  that his/her sole and exclusive remedy for Heritage's failure to pay the Settlement Sum or make

13  Monthly Payments shall be for money damages for the enforcement of its contractual right to

14  receive the Settlement Sum."  This term attempted to eliminate Plaintiff's rights and claims

15  against certain Defendants.  Plaintiff was unduly influenced, defrauded and misled by Heritage,

16  the Manfres, Klein and Anton into signing this Fraudulent Settlement.

17       76.    Anton is liable because he was Plaintiff's attorney and breached his duties of

18  loyalty and care to her. Anton represented parties with adverse interests and caused adverse

19  consequences to Plaintiff who was also his client or an intended third party beneficiary of his

20  services.  Anton's conduct and acts violated California Code of Professional Responsibility

21  Rules 3-310(b), 3-310(b) and other rules.

22       77.    The Fraudulent Settlement disclosed at section 6.15 that Anton "does not and will

23  not provide any legal advice to" Plaintiff, but that statement was intentionally and fraudulently

24  inconsistent with this April 2018 offer and consultation to zealously represent Plaintiff in the

25  same action involving the same insurance and investments.  Anton had a non-waivable conflict

26  of interest and could not take adverse action to Plaintiff.  Anton's Retainer Agreement offer,

27  signed by him and presented by him to Plaintiff, was never rescinded.  This Fraudulent

28  Settlement had Anton act directly adverse to Plaintiff's interests.

- 17 -

78.     The Fraudulent Settlement should be rescinded or voided due to financial elder abuse, fraud, misrepresentation, duress, mistake, illegality, mistake and/or undue influence thereby allowing Plaintiff to pursue all of her claims and prayers for relief asserted against all the Defendants in this civil complaint.

## V.     PUNITIVE DAMAGES, TREBLE DAMAGES AND BURDEN-SHIFTING

79.     Defendants engaged in malice, oppression, or fraud pursuant to California Civil Code §3294.  The individual employees of the corporate entity Defendants who committed these wrongful acts and omissions were either officers, directors, or managing agents of such Defendants or such Defendants authorized their employees' misconduct or subsequently adopted or approved their wrongful conduct such that such Defendants are liable for punitive damages based on their employees' conduct.

80.     Defendants were persons "engaged in the business of advising others for compensation as to the advisability of purchasing, holding or selling property for investment and who represent[ed]" themselves to be experts but failed to perform with "the due care and skill reasonably to be expected of a person who is such an expert."  California Civil Code §3372. Defendants' advice and recommendations in this action was part of their strategy to sell life insurance and other products as investment vehicles. Defendants violated California Civil Code § 3372, which is a burden-shifting statute that they must prove they met the standard of care for similar experts.

81.     Defendants engaged in unlawful conduct under California Civil Code §3345 and Code of Civ. Proc. §1029.8, involving a senior citizen residing in California. The remedy for a finding under this statute includes a fine, civil penalty or penalty or other remedy up to three times greater than authorized by the statute or the amount awarded by the trier of fact.

82.     Defendants' misconduct constituted undue influence and duress over Plaintiff under California Civil Code §1575 and Welfare & Institutions Code §15610.70.

83.     Defendants engaged in violations of California Insurance Code §790.02 among other insurance codes and practices.

84.     Anton engaged in violations of California Rules of Professional Conduct Rules 3-310(b) and (c) by forming an attorney-client relationship with Plaintiff for improper purposes, i.e. to exert undue influence and duress over her to sign away her rights without seeking independent legal counsel and while falsely presenting as her attorney. Anton's acts were directly adverse to Plaintiff's interests to induce her to sign the Fraudulent Settlement. Heritage, the Manfres and Anton engaged in acts for which punitive damages, trebled damages and burden-shifting is warranted under the rules and statutes identified in this civil complaint.

85.     These allegations and prayer for relief are pled for every cause of action below for which these remedies may be applicable.

### FIRST CAUSE OF ACTION

### (PROFESSIONAL NEGLIGENCE AGAINST ALL
### DEFENDANTS AND DOES 1 TO 6 INCLUSIVE)

86.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

87.     Plaintiff alleges that Insurance Defendants, and each of them, owed the Plaintiff the duty of care applicable to similar professionals and professional entities.  The standard of care applicable may be heightened because Insurance Defendants held themselves out as experts in insurance, wealth accumulation, financial planning and structuring to maximize assets and to reduce tax impairments and penalties.  For instance, Insurance Defendants represented to Plaintiff that she would be able to afford the premiums from onset and, in addition expect to receive an income stream from her IRA account as well as the $750,000, plus the death benefit from the option increasing agreement in the life insurance policy. They neglected to properly disclose all the tax impairments, consequences and liabilities of these transactions.  All the advice, recommendations and conduct in this action is actionable.

88.     Anton formed an attorney-client relationship with Plaintiff by the fact that he voluntarily received confidential information about her situation with respect to the FIP collapse and furnished her with legal advice and impressions vis-a-vie dual agents and his other joint and/or concurrent clients Albert, Heritage and Klein. In the alternative, Plaintiff was an intended

- 19 -

third party beneficiary of Anton's legal services to Heritage and the Manfres because his legal advice and impressions were, with his consent, for the benefit of Plaintiff and communicated to her by Anton's other clients, Albert and Klein with the reasonable expectation that Plaintiff was relying on Anton's advice.

89.   Plaintiff alleges that Insurance Defendants, and each of them, breached their duties of care.

90.   Plaintiff alleges that Anton breached the duty of care and the duty of loyalty by failing to provide Plaintiff with information material for her to understand the conflicts of interest, divided loyalties and that Anton was primarily advising clients directly adverse to Plaintiff. Anton omitted to state facts to Plaintiff to make his advice not misleading and his appearance of representing her interests was reasonably expected to mislead her and to induce her to rely on Anton's legal advice.  Anton omitted to give Plaintiff a complete and accurate descriptions and his other clients goals which were directly adverse to Plaintiff.  Anton's written disclosures of his conflicts of interest were incomplete, uninformed and misleading by omitted material facts necessary to render them true.

91.   Defendants' breach of their respective duties of care proximately caused her emotion and financial harm and said harm was a substantial factor in causing Plaintiff's harm, including her expectation of the proposed insurance policy face value amount of $750,000 and the addition death benefit equating to $936,365 and the other remedies in the prayer for relief.

**SECOND CAUSE OF ACTION**

**(BREACH OF FIDUCIARY DUTY AGAINST ALL**

**DEFENDANTS AND DOES 1 TO 6 INCLUSIVE)**

92.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

93.   Insurance Defendants held themselves out as financial experts in insurance, wealth accumulation, financial management and in investment allocation.  All the acts conducted by Klein were on behalf of himself, Shurwest, Heritage and MLIC as their authorized and appointed agent.

94.     The fiduciary duty arises not from the procurement of an insurance policy, but from the special relationship Insurance Defendants created and cultivated with Plaintiff, a retired, widowed senior citizen by offering her expert counseling and advice regarding her IRA portfolio allocation, selling her qualified securities, and repurposing them and other liquid assets to buy life insurance and FIP as an investment plan through a complicated structured finance program endorsed by the Insurance Defendants.  The duties the Insurance Defendants undertook created the fiduciary duty and they assumed the role as Plaintiff's fiduciaries based on the depth of the financial advisory relationship, not just the sale of an insurance policy.

95.     An attorney-client relationship formed through the communication of legal impressions, strategies and ideas between Anton and Plaintiff. Plaintiff reasonably believed she was receiving legal advice from Anton vis-a-vie Albert, Heritage and Klein. Anton owed Plaintiff a fiduciary duty under the duty of loyalty and the duty of care. In the alternative, Plaintiff was an intended third party beneficiary of Anton's legal services performed for Heritage and the Manfres. Anton gave consent for his otherwise privileged legal advice to be communicated to Plaintiff as if she was his client and Anotn reasonably expected her to rely on his advice.

96.     Insurance Defendants breached their fiduciary duties by engaging in all acts discussed herein.  Insurance Defendants put their own interests ahead of Plaintiff's, took action and made recommendations for their own gain at Plaintiff's expense and disregarded her best interests to recommend insurance, investments and a financial wealth plan that did not (and could not) meet her needs.

97.     Anton breached the fiduciary duty he owed to Plaintiff by acting against her interest and in the best interests of adverse parties as set forth in this action. Anton actively, intentionally and/or purposefully misled Plaintiff into believing he was protecting her interests. His disclosures about his other client relationships were deceptive and intended to mislead her into reasonably relying on his advice without a full, complete and informed picture of his divided loyalties.  Anton was prioritizing other clients directly adverse to Plaintiff and deceived her into thinking she was receiving undivided best interest advice from him. Plaintiff reasonably relied on

1  Anton's advice without being informed that his loyalties were with other clients directly adverse

2  to her interests.

3      98.    Insurance Defendants concealed material facts from Plaintiff and misled her and

4  deceived her in all the acts discussed herein.  Insurance Defendants did not perform proper due

5  diligence or a proper investigation into the life insurance policy, the structured income stream,

6  FIP and their overall financial planning advice, as they should have.

7      99.    The Fraudulent Settlement should be rescinded or voided.

8      100.   Defendants' breach proximately caused her emotional and financial harm and said

9  harm was a substantial factor in causing Plaintiff's harm, including her expectation of the

10  proposed insurance death benefit under the option increasing agreement of approximately

11  $936,365 and the other remedies in the prayer for relief.

12                          **THIRD CAUSE OF ACTION**

13                  **(CALIFORNIA FINANCIAL ELDER ABUSE AGAINST**

14                      **ALL DEFENDANTS AND DOES 1 TO 10)**

15      101.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as

16  though fully set forth herein.

17      102.   Plaintiff asserts her rights under the California's financial elder abuse statute

18  because she turned 65 years old in 2014, a date preceding a substantial part of the misconduct

19  occurred as set forth herein.

20      103.   Defendants, and each of them, are liable to Plaintiff, and each of them, because

21  they violated California's financial elder abuse statute: (i) takes, secretes, appropriates, obtains or

22  retains, any interest in any real or personal property, for a wrongful use, or with intent to defraud

23  or both; or (ii) assists in doing any of the above described acts; or (iii) does any of the above

24  described acts through undue influence and duress.

25      104.   California's financial elder abuse statute focuses on the actionable conduct pled in

26  this civil complaint including the unlawful investment, financial, insurance, wealth management

27  and legal advice, including but not limited to, the liquidation of the qualified assets to purchase

28  the IUL policy and FIP, the transfer of the qualified accounts to Defendants' management at

                                    - 22 -

GoldStar, the tax consequences of utilizing qualified assets to purchase non-qualified assets and the loss of principal and lost opportunity caused by all the Defendants, except Anton. California's financial elder abuse statute also focuses against Anton, Heritage, the Manfres and Klein on the actionable conduct pled in his civil complaint focused on the Retainer Agreement and Fraudulent Settlement and causing Plaintiff to compromise her rights while under the undue influence, duress and intentional misconduct and fraud by these Defendants.

105.    A conclusive presumption of financial abuse exists under Cal. Welf. & Inst. Code § 15610.30(b) because Defendants, and each of them, knew or should have known that their malfeasance was likely to be harmful to this retired senior citizen.

106.    Defendants and their co-conspirators and aiders and abetters exerted duress, fraud, menace, coercion and undue influence and duress over Plaintiff at the time of these wrongful takings. 71. Plaintiff seeks attorneys' fees and costs of suit under Cal. Welf. & Inst. Code §§ 15657.5(a).  Plaintiff seeks pain and suffering damages under Cal. Civ. Code § 3333.2 and Cal. Welf. & Inst. Code §15657.5(b)(1). 72. Plaintiff seeks punitive and exemplary damages and trebled damages under Cal. Civ. Code §§ 3345, 3294 and other applicable statutes.

107.    The Fraudulent Settlement should be rescinded or voided due to financial elder abuse, fraud, misrepresentation, duress, mistake, illegality, mistake and/or undue influence thereby allowing Plaintiff to pursue all of her claims and prayers for relief asserted against all the Defendants in this civil complaint.

### FOURTH CAUSE OF ACTION

### (INTENTIONAL DECEIT/FRAUD AGAINST ALL

### DEFENDANTS AND DOES 7 TO 10 INCLUSIVE)

108.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

109.    On information and belief, Klein was not properly licensed (he did not prominently disclose his license number) to offer or sell insurance in the State of California.  On information and belief, MLIC transacted the life insurance policy with Plaintiff, a California resident, with an insurance agent not properly licensed in California at the time of the

- 23 -

1   transactions (Klein did not prominently disclose his California insurance number to Plaintiff).

2   Defendants recommended securities transactions (liquidations, sells and buys) without proper

3   licensure in the State of California or federally.

4          110.   Insurance Defendants, and each of them, intentionally or willfully misrepresented,

5   misled and/or deceived Plaintiff to conduct the transactions set forth in this civil complaint,

6   including: (a) liquidating her assets, incurring fees and tax consequences on the qualified assets,

7   to purchase the MLIC IUL policy and the FIP investment as part of the Structured Cash Flow;

8   and (b) the IUL and FIP's illiquidity, risk level, investment safety, mechanics of the investment

9   and Structured Cash Flow program and the overall recommendations and insistence that Plaintiff

10  follow Insurance Defendants' advice under the misrepresentation as in her best interests.

11  Insurance Defendants, and each of them, abused their position of influence and persuasion over

12  Plaintiff, a grieving widow in a very vulnerable state thereby undue influence and duress over

13  her by which she could not and did not make informed decisions.

14         111.   Klein, Heritage, the Manfres and Anton intentionally or willfully misrepresented,

15  misled and/or deceived Plaintiff to receive legal advice from Anton as his client and/or in the

16  alternative as an intended third party beneficiary. The legal advice provided to Plaintiff violated

17  the duty of care and the duty of loyalty and disadvantaged Plaintiff in direct adverse conflicts

18  with Anton, Heritage, the Manfres and Klein. But, Plaintiff was not provided with sufficient

19  information nor Anton's informed risk disclosures to knowingly give informed consent to this

20  representation.  Klein, Heritage, the Manfres and Anton abused their position of influence and

21  persuasion over Plaintiff, a grieving widow in a very vulnerable state thereby undue influence

22  and duress over her, by which she could not and did not make informed decisions.

23         112.   Defendants Anton, the Manfres, Heritage and Klein intended that Plaintiff rely on

24  their advice and knew that the Fraudulent Settlement was not in her best interests and arose from

25  and was strongly recommended by persons and entities with material conflicts of interest that

26  went undisclosed or insufficiently disclosed to Plaintiff.

27         113.   The Fraudulent Settlement should be rescinded or voided due to financial elder

28  abuse, fraud, misrepresentation, duress, mistake, illegality, mistake and/or undue influence

- 24 -

28

1  thereby allowing Plaintiff to pursue all of her claims and prayers for relief asserted against all the

2  Defendants in this civil complaint.

3        114.   Defendants' breach of their respective duties of care proximately caused her

4  emotional and financial harm and said harm was a substantial factor in causing Plaintiff's harm,

5  including her expectation of the proposed insurance policy face value of $750,000 plus the death

6  benefit under the option increasing agreement potentially of $936,365 and the other remedies in

7  the prayer for relief.

8        115.   Plaintiff is entitled to reasonable attorneys' fees under any statute or law

9  providing such entitlement, including California Corporations Code §25501.5(b), California

10  Code of Civil Procedure §1029.8 and California Business & Professionals Code §16240. 79.

11  Plaintiff is entitled to an order or judgment prohibiting Defendants from conducting any

12  insurance or securities business transactions with a State of California resident without proper

13  licensures.  Plaintiff is entitled to an order or judgment from advertising any insurance or

14  securities business with a State of California resident without proper licensure.

15  **FIFTH CAUSE OF ACTION**

16  **(DECLARATORY RELIEF AGAINST HERITAGE AND DOES 1 TO 10)**

17        116.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as

18  though fully set forth herein.

19        117.   An actual controversy relating to legal rights and duties of the parties contained in

20  the Fraudulent Settlement exists between Plaintiff and Heritage.

21        118.   The Fraudulent Settlement was entered into by deception, financial elder abuse,

22  fraud, misrepresentation, duress, mistake, illegality, mistake and/or undue influence thereby

23  entitling Plaintiff to render it null and void or rescinded.

24        119.   Plaintiff timely repudiated the Fraudulent Settlement as soon as she became

25  aware, after hiring independent counsel, and Plaintiff has not negotiated any of the Heritage

26  settlement checks since said repudiation and any inadvertent negotiations were mistaken.

27        120.   A judicial determination is necessary at this time in order for Plaintiff to plead her

28  claims and prayers for relief against all the Defendants in this civil complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them:

1.     Statutory damages, including rescission of all the transactions;

2.     Expectation/consequential damages of $936,365 or an amount according to proof;

3.     Special and general damages in an amount according to proof;

4.     Unjust enrichment in an amount according to proof;

5.     Treble damages under Code of Civ. Proc. §1029.8, Civil Code §3345 and Wel. & Inst. Code §15657.5;

6.     Attorneys' fees and costs of suit under any statute or law providing such entitlement, including Corp. Code § 25501.5(b), Wel. & Inst. Code § 15657.5(a), Code of Civ. Proc. § 1029.8 and Bus. & Prof. Code § 16240;

7.     Pre-judgment interest on all damages at the maximum legal rate;

8.     Punitive and exemplary damages in a sum sufficient to punish defendants, and deter future repetitions of said or similar conduct;

9.     Restitution relief from Defendants, including the return of all fees, commissions and charges for the services or products at issue;

10.     Civil penalties in an amount to be decided by the Court;

11.     Declaration that the Fraudulent Settlement is null and void and/or rescinded; and

12.     For such other further relief as the court may deem just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury as to all issues so triable in this action.

**REIF LAW GROUP, P.C.**

Dated: June 10, 2019          By: _____

Brandon S. Reif
Ohia A. Amadi

Jon C. Furgison
**FURGISON LAW GROUP, P.C.**
Attorneys for Plaintiffs

- 26 -

PLAINTIFF'S COMPLAINT